73798. GAY et al. v. PIGGLY WIGGLY SOUTHERN, INC.
(358 SE2d 468)

CARLEY, Judge.

On December 17, 1984, Mrs. Eula Denmark was seriously injured in a vehicular collision which occurred in Jefferson County. The car in which Mrs. Denmark was a passenger was struck from the rear by a truck that was owned by appellee-defendant Piggly Wiggly Southern, Inc. (Piggly Wiggly) and which was being operated by one of its employees. Piggly Wiggly is a Georgia corporation and, for purposes of determining venue pursuant to OCGA § 14-2-63 (a), is a resident of Toombs County.

Subsequent to the collision, Mrs. Denmark was afforded medical treatment in Jefferson County. Among those who treated Mrs. Denmark were the following: Dr. Kim; Dr. Weissman; and, an employee of Physical Therapy Associates, Inc. (PTA). PTA is a foreign corporation authorized to do business in Georgia and, for purposes of determining venue pursuant to OCGA § 14-2-63 (a), is a resident of Fulton County.

On January 17, 1986, Mrs. Denmark died. Thereafter, the case sub judice was initiated by the filing of a two-count complaint in Fulton County. Piggly Wiggly, Dr. Kim, Dr. Weissman and PTA were all named as defendants in both counts of the Fulton County action. Count One of the complaint was the assertion of a claim by appellant-plaintiff Gay, who is Mrs. Denmark's executrix. According to the allegations of this count, Mrs. Denmark had originally been injured as the result of the negligence of Piggly Wiggly's truck driver and she had subsequently received negligent medical treatment for this injury from Dr. Kim, Dr. Weissman, and the employee of PTA. It was fur-

ther alleged that Piggly Wiggly and the other defendants were, as among themselves, all joint tortfeasors whose respective and individual acts of negligence had ultimately resulted in Mrs. Denmark's paralysis and her eventual death. Based upon these allegations, appellant Gay, in her capacity as executrix, sought to recover for the following: the pain and suffering endured by Mrs. Denmark; the medical and related ante mortem expenses incurred in caring for Mrs. Denmark; and, Mrs. Denmark's funeral and burial expenses. As to Count Two of the complaint, the appellants-plaintiffs are the surviving children of Mrs. Denmark who were asserting a claim for the wrongful death of their mother. With regard to this wrongful death count, it was again alleged that Piggly Wiggly and the other defendants were, as among themselves, all joint tortfeasors whose respective and individual acts of negligence had ultimately resulted in Mrs. Denmark's death. Venue of appellants' respective counts was predicated upon the fact that Fulton County was the residence of PTA, one of the alleged joint tortfeasors.

Piggly Wiggly filed an answer to appellants' Fulton County action, raising improper venue as one of its defenses. The trial court conducted a hearing on Piggly Wiggly's improper venue defense and concluded that Piggly Wiggly was the original tortfeasor and that the other defendants in the case were, as to Piggly Wiggly, successive rather than joint tortfeasors. Venue of the action having been predicated upon PTA's residence in Fulton County and the trial court having concluded that Piggly Wiggly and PTA were not, as between themselves, joint tortfeasors, appellants' respective claims as against Piggly Wiggly were ordered transferred from Fulton to Toombs County. See Rule 19.1 of the Uniform Rules for the Superior Courts. The trial court certified its transfer order for immediate review and appellants applied to this court for an interlocutory appeal. Appellants' application was granted and this appeal results.

1. "Suits against joint obligors, *joint tort-feasors*, joint promisors, copartners, or joint trespassers residing in different counties may be tried in either county." (Emphasis supplied.) Ga. Const. of 1983, Art. VI, Sec. II, Par. IV. The legal concept of "joint tortfeasors" is classically understood to mean those individuals whose "separate and distinct acts of negligence concur to proximately produce an injury. [Cits.]" *Travelers Indem. Co. v. Liberty Loan Corp.*, 140 Ga. App. 458, 461 (3) (231 SE2d 399) (1976). The law recognizes that such individuals are jointly and severally liable to the injured party for the full amount of his damage and that they have, as among themselves, the right of contribution, which right exists independently of their joint and several liability. See OCGA § 51-12-32. One who is injured as the result of the separate and distinct negligent acts of such joint tortfeasors may sue any one of them, leaving that defendant to pursue

his right of contribution against the other tortfeasors. The injured party may, on the other hand, choose to file a joint suit against some or all of such tortfeasors, bringing his action in the county of residence of any one of his chosen defendants.

The law also recognizes that there are " 'cases in which a person who has suffered loss or damage may have the right to sue two persons *as if they were joint wrong-doers*, without their being, as among themselves, joint wrong-doers.' " (Emphasis supplied.) *Travelers Indem. Co. v. Liberty Loan Co.*, supra at 461-462 (3). Thus, a negligent employee and his vicariously liable employer are not "joint tortfeasors" in the classic sense, in that the employer has committed no separate and distinct act of negligence and the employee has no right of contribution against his employer. See generally *Shackelford v. Green*, 180 Ga. App. 617 (349 SE2d 781) (1986), aff'd 257 Ga. 9 (1987). However, an injured plaintiff does have "the right to sue" the negligent employee and his vicariously liable employer "as if they were" joint tortfeasors. Consequently, for purposes of venue, a plaintiff can bring a suit jointly against both a negligent employee and his vicariously liable employer in the county of residence of either. See generally *Jones v. Chandler*, 88 Ga. App. 103 (76 SE2d 237) (1953).

Accordingly, in some legal senses, including the satisfaction of constitutional venue requirements, "joint tortfeasors" is a somewhat broader concept, embracing more than merely those individuals whose own, separate acts of negligence have allegedly produced a single injury and who have, as among themselves, an independent right of contribution. "Joint tortfeasors" is not limited to this concept of "classic" joint tortfeasors, but may extend also to include the concept of "vicarious" joint tortfeasors. Thus, if, under the circumstances of this case, the employees of Piggly Wiggly and PTA can be considered to be classic joint tortfeasors as between each other, then Piggly Wiggly and PTA, as vicarious joint tortfeasors with their respective employees, can be considered to be classic joint tortfeasors as between themselves and venue in Fulton County would be proper. If, on the other hand, the employees cannot be considered to be classic joint tortfeasors as between each other, then neither can Piggly Wiggly and PTA and the trial court correctly held that proper venue of a suit solely against Piggly Wiggly would be Toombs County.

2. " 'It has always been true that where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage. However, . . . concert of action is not required — concurrent and independent wrongdoers are joint tortfeasors *if* their actions produce a single indivisible result and a rational apportionment of damages cannot be made.' [Cit.] Thus, ' "[t]he correct procedure [for determining whether a joint tortfeasor relationship exists] is to look first to

the time of the commission of the acts. If there was concert of action, then there is no need to go further to establish entire liability. But if there was no concert, the next step should be to look to the combined effect of the several acts. If the acts result in separate and distinct injuries, then each wrongdoer is liable only for the damage caused by his acts. However, if the combined result is a single and indivisible injury, the liability should be entire. Thus, *the true distinction to be made is between injuries which are divisible and those which are indivisible.*" [Cit.]' [Cit.]" (Emphasis in original.) *Phillips v. Tellis*, 181 Ga. App. 449-450 (352 SE2d 630) (1987).

Under the factual allegations of the instant case, there was no concert of action as between Piggly Wiggly's employee and any of the other defendants or their employees. Piggly Wiggly's employee was the original tortfeasor. As the result of the alleged negligence of Piggly Wiggly's employee, Mrs. Denmark required medical treatment for her initial injuries and, in the course of that treatment, was subsequently subjected to alleged malpractice at the hands of the other defendants. There being no concert of action, we move to the " 'next stop [,which is] to look to the combined effect of the several acts.' " *Phillips v. Tellis*, supra at 450.

As to Count One, it is alleged that, as the result of the initial negligence of Piggly Wiggly's employee combined with the subsequent negligence of the other defendants, Mrs. Denmark ultimately suffered paralysis. Although paralysis may be a physical condition that was ultimately manifested by Mrs. Denmark, it is not, under the allegations of the complaint, the only physical injury that she did sustain. She suffered a separate and distinct injury as the result of the initial vehicular collision. That original injury was then subsequently aggravated by allegedly negligent medical treatment. It was that subsequent aggravation of the original injury which ultimately resulted in Mrs. Denmark's paralysis. The alleged aggravation of Mrs. Denmark's original injury, "while contributing to the overall damage, was subsequent to the original injury and created in favor of [her] a separate cause of action against [the other defendants for malpractice]." *Knight v. Lowery*, 228 Ga. 452, 455 (185 SE2d 915) (1971), overruled on other grounds *Mitchell v. Gilson*, 233 Ga. 453, 455 (211 SE2d 744) (1975) and *Williams v. Physicians &c. Hosp.*, 249 Ga. 588 (292 SE2d 705) (1982). "There is a line of cases which distinguishes tortfeasors who act in concert to produce a single indivisible injury from successive tortfeasors who do not act in concert and who produce more or less (the cases are not precise) divisible injuries. In these cases the former tortfeasors are considered joint tortfeasors . . . while the latter are termed successive tortfeasors. . . . [Cit.] *[Knight v.] Lowery* [, supra,] has lived a troubled life but is the rule today. [Cits.]" *Posey v. Med. Center-West*, 257 Ga. 55, 56 (1987).

Accordingly, not only were there separate acts of alleged negligence, there were separate injuries to Mrs. Denmark as the alleged result of those acts. See generally *Knight v. Lowery*, supra; *Phillips v. Tellis*, supra; *Jones v. Brown*, 164 Ga. App. 388 (297 SE2d 325) (1982). Compare *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559 (272 SE2d 251) (1980); *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974), aff'd 233 Ga. 453, supra. But for the alleged original negligence of Piggly Wiggly's employee, Mrs. Denmark would not have been injured in the vehicular collision. But for the alleged subsequent negligence of the other defendants, Mrs. Denmark's original injury would not have resulted in her ultimate paralysis. Had Mrs. Denmark's original injury *not* been aggravated as the result of subsequent malpractice, then the only possible cause of action arising from the fact of her ultimate paralysis would be against Piggly Wiggly. Since Mrs. Denmark's paralysis is the alleged result of separate injuries as well as separate acts, her ultimate paralysis is itself a divisible injury and "a reasonable basis exist[s] on which damages [can] be apportioned: [Piggly Wiggly would be] liable for the initial injury and its subsequent aggravation, but the [other defendants would be] liable only for the aggravation caused by [their] alleged malpractice. Because the damages [can] be apportioned, [Piggly Wiggly and] the [other] defendants [are] not joint tortfeasors." *Gilson v. Mitchell*, supra at 329. " 'It is true that [Piggly Wiggly] could [be] held liable for the aggravation of the injury caused by the [other defendants'] negligence, but . . . that liability is not the result of any concept of joint wrongs but is rather the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. Conversely, it would defy reason to hold the [other defendants] liable for injuries caused by the original wrongdoer which were not the consequences of [their] own carelessness. . . .' " *Knight v. Lowery*, supra at 455-456.

"Where there is no concert of action and 'where apportionment is possible, even though difficult, concurrent but independent tortfeasors are not in the true sense of the word "jointly" culpable.' [Cit.] ' "If (two persons) merely inflict *separate wounds, and (the victim) survives*, a basis for division exists, no matter how difficult the proof may be, and the torts are several." (Cit.)' [Cit.] 'Each may have been "a cause" of an injury but a separate cause and logical distinction exist for apportionment of cause. (Cit.)' [Cit.]" (Emphasis supplied.) *Phillips v. Tellis*, supra at 450. The claim for pain and suffering alleged by appellant Gay in Count One represents the personal injury claim that was assertible by Mrs. Denmark herself during her life. See *Complete Auto Transit v. Floyd*, 214 Ga. 232, 237-238 (2) (104 SE2d 208) (1958). Since Mrs. Denmark could not have brought

her own suit for pain and suffering against Piggly Wiggly *as an alleged joint tortfeasor* with the other defendants, it follows that appellant Gay cannot. The trial court correctly sustained Piggly Wiggly's defense of improper venue as against appellant Gay's claim for Mrs. Denmark's pain and suffering and correctly ordered that claim against Piggly Wiggly transferred to Toombs County.

The same analysis would also apply to the claim that is being asserted by appellant Gay for the recovery of the medical and related expenses that were incurred in caring for Mrs. Denmark prior to her death. The statute which authorizes the personal representative to recover certain enumerated expenses incurred by and on behalf of a deceased person was not specifically enacted as a provision of our wrongful death statute. See Ga. L. 1952, p. 245. It was, however, unofficially codified as a wrongful death provision. See former Ga. Code Ann. § 105-1310. Although the personal representative's right to recover those expenses has since been officially codified as a provision of our wrongful death statute, see OCGA § 51-4-5 (b), it is clear that, at least insofar as the provision serves to authorize a personal representative to recover the ante mortem expenses incurred by a deceased person, it proceeds only on the theory that the claim for such expenses *survives* a deceased who would otherwise have been entitled to bring a suit to recover those expenses had he lived. See generally *Complete Auto Transit v. Floyd,* supra at 238 (3). Accordingly, notwithstanding its current official codification as a part of our wrongful death statute, insofar as OCGA § 51-4-5 (b) gives the personal representative the right to recover a deceased's ante mortem expenses, it is not a true wrongful death provision but a mere survival statute. "[M]edical expenses being an item of special damage incident to the recovery for the injury to the person, [such expenses cannot be recovered unless] there [is a provision] of our law for *the survival* of causes of action for the injury to the person. . . ." (Emphasis supplied.) *Davis v. Atlanta Gas Light Co.,* 82 Ga. App. 460, 466-467 (61 SE2d 510) (1950). It is only to the extent that OCGA § 51-4-5 (b) constitutes a "provision of our law for liability in case of *funeral expenses* growing out *of wrongful death* . . ." that it is a true wrongful death provision rather than a mere survival statute. (Emphasis supplied.) *Davis v. Atlanta Gas Light Co.,* supra at 467.

Thus, OCGA § 51-4-5 (b) provides for the survival of the deceased's own cause of action for the medical and the other necessary expenses incurred in caring for him prior to his death. Since Mrs. Denmark could not have brought her own suit for medical and other ante mortem expenses against Piggly Wiggly *as an alleged joint tortfeasor* with the other defendants, it follows that appellant Gay cannot. The trial court correctly ordered the claim against Piggly Wiggly for Mrs. Denmark's medical and other ante mortem expenses

transferred to Toombs County.

3. The holding in Division 2 applies only to Mrs. Denmark's own personal injury claims for pain and suffering and for medical and ante mortem expenses, which claims survived her death. OCGA § 9-2-41. Those claims differ from the other claim that is asserted by appellant Gay in Count One and from the claim that is asserted by Mrs. Denmark's surviving children in Count Two. Appellant Gay's claim for Mrs. Denmark's funeral and burial expenses and the claim for the full value of the life of Mrs. Denmark are claims which belong to the respective appellants themselves, in their representative or individual capacities, not to Mrs. Denmark. These claims did not survive Mrs. Denmark, but to the contrary, are dependent upon the fact of her death. See OCGA §§ 51-4-2; 51-4-5 (b). Accordingly, as to these claims, the respective appellants assert the occurrence of but one injury *to themselves* resulting from the combined negligence of Piggly Wiggly and that of the remaining defendants. That injury is the wrongful death of Mrs. Denmark.

Any "assertion that an original tortfeasor and a subsequently negligent physician [can never] be joint tortfeasors is without merit. [Cit.]" *Parks v. Palmer*, 151 Ga. App. 468, 470 (1) (260 SE2d 493) (1979). "Where the alleged negligent acts of two or more tortfeasors result in a single and indivisible injury, *such as death*, the alleged tortfeasors may be sued jointly. [Cits.]" (Emphasis in original.) *Posey v. Med. Center-West*, 180 Ga. App. 674, 676 (1) (350 SE2d 259) (1986), rev'd on other grounds, 257 Ga. 55, supra. "While it does not take concert of action to make joint tortfeasors ([cit.]) some injuries, such as those resulting in death, are single and cannot be apportioned." *Sims v. Bryan*, 140 Ga. App. 69, 72 (3) (230 SE2d 39) (1976). See also *Gilson v. Mitchell*, 131 Ga. App. supra at 324-325. "[I]f the alleged negligent acts of two or more tortfeasors result in a single and indivisible injury, *such as death* ([cits.]), the alleged tortfeasors may be sued jointly, so that venue proper as to one tortfeasor is proper as to all joint tortfeasors. [Cits.]" (Emphasis in original.) *Parks v. Palmer*, supra at 470 (2).

Here, it is alleged that an employee of Piggly Wiggly originally injured Mrs. Denmark and that others, including an employee of PTA, subsequently aggravated that injury, with the result that Mrs. Denmark ultimately died. But for the negligence of Piggly Wiggly's employee, Mrs. Denmark would not have died. But for the negligence of others, including an employee of PTA, Mrs. Denmark would not have died. Piggly Wiggly is vicariously and independently liable for the negligence of its employee and PTA is vicariously and independently liable for the negligence of its employee. "Thus, under the facts in this case, [Piggly Wiggly and PTA] are joint tortfeasors [as to all claims based upon Mrs. Denmark's death]. [Cit.]" *Posey v. Medi-*

*cal Center-West*, 180 Ga. App. supra at 676 (1). It follows that the allegations of appellants' complaint were sufficient to show that venue of such of their respective claims as were based upon the death of Mrs. Denmark was proper in Fulton County and the trial court erred in ordering those claims transferred to Toombs County.

4. For the reasons discussed in Division 2, the order transferring to Toombs County appellant Gay's claims for Mrs. Denmark's pain and suffering and for her medical and other ante mortem expenses is affirmed. For the reasons discussed in Division 3, the order transferring appellant Gay's and the other appellants' wrongful death claims is reversed. We note, "however, that should the legislature in the future make *forum non conveniens* an option for determining venue, a case such as that *sub judice* would be well suited for its application." *Smith v. Bd. of Regents*, 165 Ga. App. 565, 566 (302 SE2d 124) (1983).

*Judgment affirmed in part and reversed in part. Banke, P. J., and Benham, J., concur.*

DECIDED MAY 19, 1987 —
REHEARINGS DENIED JUNE 3, 1987 — 

*Thomas W. Malone*, for appellants.
*John T. Woodall*, for appellee.