### A08A0553. THE KROGER COMPANY et al. v. MAYS.
(664 SE2d 812)

RUFFIN, Presiding Judge.

William H. Mays III, as representative of the estate of Carrie Lee Mays, ("Mays") sued The Kroger Company and its pharmacist (collectively, "Kroger"), alleging that the negligent filling of a prescription resulted in harm to Ms. Mays.[1] Following trial, a jury awarded the estate $156,561.90. On appeal, Kroger contends that the trial court erred in concluding that it was not entitled to any set-off from a prior settlement. For reasons that follow, we agree and thus reverse and remand.

Once a trial court has entered judgment on a jury's verdict, we will affirm if any evidence supports the verdict so long as no material legal error exists.[2] With respect to plain legal error, however, our review is de novo.[3]

Here, the underlying facts are largely undisputed. In May 1994, Carrie Lee Mays sought to have a prescription filled for anti-seizure medication at Kroger, but was given anti-fungal medication instead.[4] As a result of taking the incorrect medication, Ms. Mays began

---

[1] William Mays and Henry Mays, Ms. Mays' son, also filed suit in their individual capacities, presumably to pursue a wrongful death claim. However, it appears from the pre-trial order that this claim was not submitted to the jury, and the verdict form lists the estate as the sole plaintiff. Under these circumstances, it does not appear that either William or Henry Mays are proper parties to this appeal in their individual capacities. In any event, for the sake of clarity, we refer to a single plaintiff.

[2] See *Timmons v. Cook*, 287 Ga. App. 712 (652 SE2d 604) (2007).

[3] See id.

[4] Ms. Mays, who had suffered a series of strokes and was severely disabled, took Dilantin to control seizures.

having seizures and was taken to the hospital, where she was given anti-seizure medication, intravenously, through her hand. According to the plaintiff, the intravenous feed was negligently administered, causing injury to the hand that required subsequent surgery. Following surgery, Ms. Mays' health deteriorated, and she died.

Mays filed suit against Kroger, its pharmacist, and various hospital defendants, alleging several causes of action. Mays reached a settlement agreement with the hospital defendants before trial, and the case proceeded to trial solely against Kroger. In the pre-trial order, Kroger admitted to negligence in filling the prescription, leaving for trial the issues of proximate cause and damages. In that order, Kroger also contended that it would be entitled to set-off for amounts paid by the medical defendants.

During trial, the plaintiff presented evidence of the injuries and pain suffered by Ms. Mays. Some testimony related to Ms. Mays' seizures, but most of the testimony — particularly with regard to pain and suffering — stemmed from the injury to her hand and the subsequent surgery. After the close of evidence, the parties once again discussed set-off. Kroger's attorney stated that he believed Kroger was entitled to set-off for money paid by the hospital defendants. The attorney characterized Kroger and the hospital defendants as "successive tortfeasors" and argued "that the set-off of whatever amount that might be would only be against the hand injury caused by the" hospital defendants. In this regard, the attorney argued for a special verdict form, separating the seizure injury from the hand injury. Mays' attorney objected to the use of a special verdict form, and the jury was given a general verdict form. The jury then awarded Mays $150,000 for pain and suffering and $6,561.90 in medical expenses.

After the jury rendered its verdict, counsel for Mays referenced the settlement agreement that Mays had signed the same day, in which the hospital defendants paid $120,000 to settle the claims against them. The agreement, which was signed only by Mays, purported to allocate $105,000 as payment for the wrongful death claim and $15,000 to the estate for the remaining claims. Although Kroger sought to set-off the $120,000 against the jury's verdict, the trial court refused to permit any such set-off, asserting that Kroger had taken the position that the case involved successive tortfeasors and thus set-off was not permitted.

Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and

satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole.[5]

If the parties are properly considered joint tortfeasors, then all parties are jointly and severally liable for the full amount of the plaintiff's damages.[6] Accordingly, a joint tortfeasor would be entitled to a set-off of any amount paid by another joint tortfeasor.[7] If, however, the parties are successive tortfeasors, then no set-off is required.[8]

The determination as to whether parties are joint or successive tortfeasors requires analysis of the facts.[9] In making this determination, we have held that

> independent wrongdoers are joint tortfeasors *if* their actions produce a single indivisible result and a rational apportionment of damages cannot be made. Thus, the correct procedure for determining whether a joint tortfeasor relationship exists is to look first to the time of the commission of the acts. If there was concert of action, then there is no need to go further to establish entire liability. But if there was no concert, the next step should be to look to the combined effect of the several acts. If the acts result in separate and distinct injuries, then each wrongdoer is liable only for the damage caused by his acts. However, if the combined result is a single and indivisible injury, the liability should be entire. Thus, the true distinction to be made is between injuries which are divisible and those which are indivisible.[10]

Here, the evidence as presented to the jury treated the negligence of Kroger and the hospital defendants as resulting in a single injury. Indeed, the vast majority of testimony regarding Ms. Mays' pain and suffering revolved around the injury to her hand, which the jury was authorized to find was proximately caused by the negligent filling of the prescription. Under these circumstances, the trial court

---

[5] *Candler Hosp. v. Dent*, 228 Ga. App. 421, 422 (491 SE2d 868) (1997).

[6] See *Phillips v. Tellis*, 181 Ga. App. 449 (352 SE2d 630) (1987).

[7] See *Cole v. Webb*, 267 Ga. App. 174, 177 (2) (598 SE2d 886) (2004).

[8] See *Phillips*, supra at 450.

[9] See id.

[10] (Citation and punctuation omitted; emphasis omitted and in original.) *Gay v. Piggly Wiggly Southern, Inc.*, 183 Ga. App. 175, 177-178 (2) (358 SE2d 468) (1987).

erred in failing to treat the parties as joint tortfeasors.[11] To hold otherwise would permit Mays to obtain an impermissible double recovery.[12]

Furthermore, we are unpersuaded by Mays' argument that, by stating on the record that it was a successive tortfeasor, Kroger is barred from seeking a set-off. It is true that a party "cannot complain of a judgment, order, or ruling that [its] own procedure or conduct procured or aided in causing."[13] However, counsel's comments regarding Kroger's status as a successive tortfeasor must be viewed in context. The attorney was clearly seeking to separate the injuries on the verdict form. Mays objected to this, choosing to present the injury to the jury as indivisible. It follows that Kroger's characterization of its role as a successive tortfeasor does not preclude it from asserting on appeal that it should be treated as a joint tortfeasor.

Finally, Kroger argues that it is entitled to a set-off of the full amount paid by the hospital defendants. Mays, on the other hand, contends that the set-off should be limited to the $15,000 that the settlement agreement allocated to the estate's claim. It appears, however, that the trial court never addressed the issue of the amount of set-off. "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it."[14] Accordingly, this case must be remanded to the trial court for determination of the appropriate set-off.

*Judgment reversed and case remanded. Andrews and Bernes, JJ., concur.*

DECIDED JULY 2, 2008 — ▮▮▮▮▮▮▮

*Douglas A. Wilde*, for appellants.
*Charles A. Mathis, Jr., Susan M. Cremer*, for appellee.

---

[11] See *Parks v. Palmer*, 151 Ga. App. 468, 470-471 (2) (260 SE2d 493) (1979).

[12] See *Candler Hosp.*, supra.

[13] (Punctuation omitted.) *Timmons*, supra at 713 (1).

[14] (Punctuation omitted.) *Shuler v. Hicks, Massey & Gardner, LLP*, 280 Ga. App. 738, 742 (2) (634 SE2d 786) (2006).